UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

       Plaintiff,

v.

Dan Whitt,

       Defendant,

and

Handleman Company, as Plan
Administrator of the Handleman Company
Pension plan,

       Garnishee.

_____/

Case No. 11-50395

Honorable Nancy G. Edmunds

**ORDER AND OPINION GRANTING IN PART, DENYING IN PART, AND HOLDING IN ABEYANCE IN PART DEFENDANT DAN WHITT'S OBJECTIONS TO GARNISHMENT**

Before the Court is Defendant Dan Whitt's objections to garnishment. The parties have submitted a statement of agreed facts and contested issues (the "Statement"). The Court therefore relies upon those agreed facts and only addresses the contested legal issues in this order, each in turn.

The Court notes initially that, at the hearing held on August 31, 2011, Defendant withdrew or waived his arguments urging the Court to recalculate the restitution amount the Court originally imposed; arguments that the Court would reject in any event as collateral attacks on the restitution amount or restitution obligation. An attack on a restitution recalculation or obligation by means of an objection to garnishment is an impermissible

route to collaterally attack the judgment. Here, there is nothing so extraordinary to warrant the Court to revisit the restitution award.[1] An objection to garnishment may only challenge "exemptions to which [the defendant] might be entitled, and the government's compliance with the [Fair Debt Collection Practices Act.]" *United States v. Pugh*, 75 F. App'x 546, 547 (8th Cir. 2003).

The Court presents a more thorough discussion of the issues Defendant has not withdrawn or waived, i.e., Defendant's exemption argument–whether his pension plan may be garnished and how much of that plan may be garnished.

For the reasons stated below, the Court GRANTS IN PART, DENIES IN PART, and HOLDS IN ABEYANCE IN PART Defendant's objections. The only objection the Court GRANTS is how much the United States and Handleman may garnish from Defendant's monthly pension plan payments–they may garnish twenty-five percent until any period comes during which Defendant can elect to receive a lump sum. At that time, the entire corpus of the pension plan may be garnished. The Court's decision on the pending objection whether Defendant has the ability to pay the accrued and accruing interest is to

_____

[1] See *United States v. Pugh*, 75 F. App'x 546, 547 (8th Cir. 2003) (holding that the garnishment hearing was limited to "any exemptions to which [the defendant] might be entitled, and the government's compliance with the [Fair Debt Collection Practices Act.]"). As Handleman points out, an objection to garnishment is not an opportunity for a defendant "to challenge the validity of the underlying conviction or restitution obligation."

See also, *Cani v. United States*, 331 F.3d 1210, 1213 (11th Cir. 2003) ("[The defendant's] has waived his challenge to the district court's initial restitution calculation, as he failed to raise it at sentencing or on direct appeal, and has demonstrated no exceptional circumstances that would excuse this failure." (and citing cases for the same holding) and also holding, "although a restitution calculation may be contested for the first time on direct appeal, which will give rise to plain error review, we can find no case (and have been cited to none) in which a defendant has been permitted to advance such a challenge for the first time in a collateral proceeding.") *Id.* at 1214.

be HELD IN ABEYANCE pending the submission of additional briefing and supporting documentation.

**1.    Transfer back to the Eastern District of Michigan.**

The parties have resolved this issue.

**2.    Waiver of all accrued interest.**

Defendant relies upon 18 U.S.C. § 3612(f)(3) for the proposition that, because the Court has discretion to waive interest amounts owed, that discretion should be exercised in his favor based on evidence he will submit showing that he does not have the present ability to pay the accrued and accruing interest and in light of the government's ability to garnish the anticipated lump sum pension plan payment.  As the Court observed at the August 31, 2011 hearing, Defendant has not yet submitted but claims to have evidence that he is not able to pay the interest.  Before issuing a decision on this interest issue, the Court needs more information.  Defendant, therefore, must, on or before **September 14, 2011**, file a supplemental brief with the following documents: (1) an updated financial statement; and (2) all tax returns post-release.  The government is to review these materials and file a written response advising the Court of its position on this interest issue on or before **September 28, 2011**.  Defendant's objection on this interest issue is hereby **HELD IN ABEYANCE** until all briefing is completed and the Court has the opportunity to review this matter.

**3.    Redetermine the amount of restitution imposed at the time of judgment.**

At the August 31, 2011 hearing, Defendant withdrew this objection.  As stated above, if not withdrawn, Defendant's objection would be rejected as an impermissible collateral

3

attack on a criminal judgment in a garnishment proceeding.  See *United States v. Miller*, 588 F.Supp.2d 789, 801 (W.D. Mich. 2008) (Lawson, J.) (adopting report and recommendation) (Scoville, Mag. J.) ("Raising objections to the validity of a criminal restitution judgment in response to a writ of garnishment is plainly an impermissible collateral attack on the judgment.").  See also *United States v. Queen*, 08-12768, 2009 WL 3270766, at *1 (E.D. Mich. Oct. 1, 2009) (Borman, J.) (adopting report and recommendation) (Whalen, Mag. J.) (holding that the defendant has the burden to show "that the funds in question are exempt from garnishment.).

**4.    Allow Defendant an offset for value of rescinded employee stock options, which Defendant claimed were valued between $100,000.00 and $175,000.00.**

At the August 31, 2011 hearing, Defendant withdrew this objection.

**5.    Allow Defendant an offset for the value of his forfeited interest in the Supplemental Executive Retirement Pension, which Defendant valued at $500,000.00.**

Again, the United States and Handleman argue that Defendant is impermissibly collaterally attacking his criminal judgment through a garnishment proceeding and should not succeed on this request.  The Court agrees, for the reasons stated above.

But even if Defendant were not foreclosed from making this argument, he would not be entitled to an offset for the Supplemental Executive Retirement Pension (SERP) funds. As Handleman points out, the SERP agreement states:

> 3.4 Forfeiture.  Notwithstanding Sections 3.1 and 3.2 hereof, the Executive's SERP Retirement Benefit shall be forfeited (and the Company shall have no further obligation whatsoever under this SERP to the Executive or to his/her Surviving Spouse):
>
> (b) At any time after the Executive's completion of five (5) Years of Service the Executive is terminated from employment with the Company for Cause

4

and the Board, in its Discretion, discontinues and forfeits the SERP
Retirement Benefit of the Executive[.]"

Defendant argues that the Board did not affirmatively act to discontinue his benefits until

March/April 2007, after the sentencing date, and therefore he should be able to receive an

offset for those amounts.  (Statement at 7.)  The United States and Handleman respond

that Defendant's SERP benefits were forfeited effective November 12, 2001, when he was

terminated for cause.  (*Id.*)  This Court agrees with the United States and Handleman.

Despite Defendant's arguments to the contrary, the fact that Handleman's formal corporate

actions took place after Defendant's sentencing is irrelevant to the issue whether he was

entitled to these benefits under the terms of the SERP agreement.  He is not.

    The SERP agreement gave the Board the discretion to terminate Defendant's

benefits, and the Board did so.  Defendant was then not entitled to the benefits and is not

entitled to a setoff.  In its supplemental brief, filed August 29, 2011, Handleman provides

the Court with documents showing that (1) the Board had delegated its authority to review

and administer the SERP to the Board's Compensation Committee ("Committee"), (2) the

Committee had delegated its authority to determine the appropriate benefit distributions for

terminated vested SERP participants to the Executive VP/CFO, (3) the Executive VP/CFO

reviewed and approved the list of those terminated vested SERP participants who were

entitled to a distribution of their SERP benefits, (4) Dan Whitt was not on the approved list,

and (5) it is non-controvertible that Defendant Whitt's termination from employment from

Handleman was for cause.  Thus, the express requirements of Section 3.4(b) of the SERP

agreement have been satisfied.

**6.   Absolve Defendant of any obligation to pay restitution because the victim
corporation filed for dissolution in February, 2008.**

5

At the August 31, 2011 hearing, this objection was withdrawn.

**7.    Whether the victim should provide information about whether the restitution amount had been recovered through insurance, thereby reducing or eliminating the need of Defendant to pay restitution.**

The United States argues that 18 U.S.C. § 3664(f)(1)(B) should preclude Defendant from receiving the insurance information he requests.  That provision states that, "[i]n no case shall the fact that a victim has received or is entitled to receive compensation with respect to a loss from insurance or any other source be considered in determining the amount of restitution."  Section 3664(j)(1) provides,

> if a victim has received compensation from insurance or any other source with respect to a loss, the court shall order that restitution be paid to the person who provided or is obligated to provide the compensation, but the restitution order shall provide that all restitution of victims required by the order be paid to the victims before any restitution is paid to such a provider of compensation.

The Court agrees with Handleman and the United States–Defendant has not shown that he is entitled to the information that he seeks.  Nor does 18 U.S.C. § 3664(f)(1)(B) provide for such information.  The Court therefore denies this request as well.

**8.    Whether the pension plan is covered by ERISA and therefore not subject to garnishment.**

At the August 31, 2011 hearing, Defendant waived/withdrew this objection.

**9.    Whether the United States is entitled to receive 100% of Defendant's monthly annuity payment, and is entitled to elect the lump sum distribution upon termination of the pension plan.**

Defendant raises two issues with this objection.  The first is how much of Defendant's monthly payment the United States and Handleman are entitled to–twenty-five percent or one hundred percent.  The second issue is whether, since the Handleman Pension Plan

6

has filed a notice to terminate its plan, and that termination may provide Defendant with the ability to receive a lump-sum distribution of his remaining benefits under the plan, the United States and Handleman can force Defendant to elect to receive that entire lump-sum distribution, and then garnish that entire amount to satisfy Defendant's restitution responsibilities.

As of October 1, 2010, Defendant has been entitled to receive a monthly payment from the Handleman Pension Plan.  After October 1, 2010, the Handleman Pension Plan sent notice to the plan participants that it was going to terminate the plan.[2]  The termination, contingent upon the Internal Revenue Service's determination of the pension plan's tax-qualified status, will allow all participants to elect to receive a lump-sum distribution of their remaining benefits in the plan.[3]  (Statement at 9.)  A request for the IRS's determination has been made and is pending.  (*Id.*)

The United States and Handleman argue that they are entitled to garnish one hundred percent of Defendant's monthly benefit under the plan as well as make any election to receive a lump-sum distribution.  Defendant argues that they are entitled to garnish twenty-five percent of his benefit.  Defendant is partially correct–the United States and Handleman are only able to garnish twenty-five percent of the monthly pension plan, until such time as

---

[2]At the August 31, 2011 hearing, the parties did not dispute that the October 1, 2010 notice expires after 180 days, and a new notice must be sent out to plan participants. Handleman assured the Court that a new notice will be sent out.

[3]From the Statement, it appears that Defendant also had a prior option to receive a lump-sum amount, from around January 12, 2011 to March 15, 2011–he did not exercise that option.  (Statement at 9.)

7

Defendant could elect to receive a lump-sum. Then, the United States and Handleman can garnish the entire corpus of the pension plan.

The United States and Handleman rely on *United States v. DeCay*, 620 F.3d 534 (5th Cir. 2010) and *United States v. Novak*, 476 F.3d 1041 (9th Cir. 2007). In *DeCay*, the Fifth Circuit held that, as here, the United States could garnish monthly pension benefits under the Mandatory Victims Restitution Act (MVRA). 476 F.3d at 540-41. The Fifth Circuit then discussed what portion of the benefits the United States could garnish. The court held that the United States was only permitted to garnish twenty-five percent of the monthly benefits. *Id.* at 543. The court held that § 3613(a)(3) of the MVRA states that the Consumer Credit Protection Act's provisions "shall apply to enforcement of the judgment under either federal or state law." *Id.* The CCPA provides, in relevant part, that only twenty-five percent of an individual's disposable earnings for any workweek is subject to garnishment. 15 U.S.C. § 1673. In *DeCay*, as here, the parties dispute whether monthly benefit payments constitute "earnings" under the CCPA. The CCPA defines "earnings" as "compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes period payments pursuant to a pension or retirement program." 15 U.S.C. § 1672(a). The Fifth Circuit recognized that several district courts throughout the United States had found that distributions from similar funds are not "earnings" as defined by the CCPA. *Id.* at 544. But the court, interpreting the phrase "pursuant to" as "in compliance with; in accordance with; under [or] . . . as authorized by . . . [or] in carrying out," found that monthly payments to an individual from a pension fund "are being made 'pursuant to' the pension fund and thereby constitute 'earnings' under the CCPA." *Id.*

8

(insertions in original, citation omitted).  The court therefore found that the United States could only garnish twenty-five percent of the pension benefits.

The Fifth Circuit also discussed a cash-out option of which the defendant could take advantage.  There, the defendant, DeCay, had the option to cash-out his employee contributions.  *Id.* at  545.  The Fifth Circuit stated that the United States "clearly has the right to obtain the cash-out in question.  The fact that DeCay possessed the option to either cash-out his retirement account or wait and receive future monthly benefits allows the United States to seek an order compelling [a cash-out of] DeCay's benefits.  *Id.* n 11.

*Novak* also supports the holding that a garnishee can force an individual to cash-out his benefits under a plan when he is entitled to do so.  476 F.3d at 1061.  "A participant's right to receive cash from his retirement plan at any time is thus limited to the right to receive the amount then available under the terms of the plan."  *Id.* at 1062.  The Ninth Circuit held that "the government can immediately garnish the corpus of a retirement plan to satisfy a MVRA judgment–rather than merely obtain post-retirement payments that otherwise would have gone to the defendant–if, but only if, the terms of the plan allow the defendant to demand a lump sum payment at the present time."  *Id.* at 1063.  *Accord United States v. Hosking*, 567 F.3d 329, 335 (7th Cir. 2009) (citing *Novak* with approval in a tax levy case and stating, "the IRS can levy on a tax debtor's IRA or pension plan to satisfy tax liability so long as the defendant has the right to withdraw money from or liquidate the account.").

Although one court in this district has found that this type of monthly payments from a pension fund are not subject to a twenty-five percent cap, that court also materially misquoted the CCPA provision, as noted in the *DeCay* opinion.  See *United States v.*

*Belan*, 07-50979, 2008 WL 2444496, at *3 (E.D.Mich. June 13, 2008) (Komives, Mag. J.). The United States and Handleman's reliance on that case is therefore misplaced.

The Court therefore orders garnishment of twenty-five percent of Defendant's monthly payments until he is able to elect a lump-sum payment; at that time, the United States and Handleman may force the election of that entire amount and garnish it as well.

For the reasons stated above, the Court GRANTS IN PART, DENIES IN PART, and HOLDS IN ABEYANCE IN PART Defendant's objections.

SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  September 13, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 13, 2011, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager

10